**24-1783**

# United States Court of Appeals for the Federal Circuit

ORTIZ & ASSOCIATES CONSULTING, LLC,

*Plaintiff-Appellant,*

*v.*

VIZIO, INC.,

*Defendant-Appellee.*

*Appeal from the United States District Court for the Northern District of Texas, in Case No. 3:23-cv-00791-N (Hon. David C. Godbey, Judge)*

## BRIEF FOR APPELLEE VIZIO INC.

Paul J. Skiermont
Steven W. Hartsell
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201
(214) 978-6600

Rex Hwang
SKIERMONT DERBY LLP
633 W. Fifth Street, Suite 5800
Los Angeles, California 90071
(213) 788-4500

*Counsel for Appellee VIZIO, Inc.*

SEPTEMBER 20, 2024

COUNSEL PRESS (800) 4-APPEAL • (JOB 333043)

# CLAIMS OF U.S. PATENT NO. 9,147,299

1. A method of brokering video data between handheld wireless devices and publicly and privately available data rendering devices in the form of at least one of a video monitor and multimedia projector for rendering of the video data at a selected rendering device, comprising:

receiving a request in a wireless data communication network from a wireless device (WD) to locate at least one data rendering device (DRD) in the form of at least one of a video monitor and multimedia projector for rendering video data selected at said WD, said request including WD location information;

said wireless data communication network identifying a physical location, operational readiness and rendering capabilities of at least one DRD for said WD based on the WD location information;

said wireless data communication network providing said WD with location information of at least one accessible DRD for selection by said WD; and

receiving from said WD via said wireless data communication network a selection of a DRD by entry of authorization code at a user interface on at least one of said WD and said DRD once the DRD is physically located, and video data selected from at least one of said WD or a server accessible by said WD for rendering at said DRD, wherein verification of the authorization code entered on the user interface causes said DRD to retrieve and render the video data.

2. The method of brokering video data between handheld wireless devices and publicly and privately available data rendering devices in the form of at least one of a video monitor and multimedia projector for rendering of the video data at a selected rendering device of claim 1, further comprising:

controlling rendering of said video data on said DRD with the commands from said WD entered on the user interface.

3. A method of brokering data between handheld wireless devices and publicly available data rendering devices for rendering of the data at a selected rendering devices, comprising:

receiving a request at a network resource from a wireless device (WD) through a wireless communications network to locate at least one data rendering device (DRD) that is available to and accessible by the public for rendering data selected at the wireless device, said request including WD location information;

said network resource determining the geographic location of said WD using at least one of GPS, accessed network identification, and network triangulation, and then identifying a physical location and rendering capabilities of at least one DRD for said WD based on the WD location information;

said network resource providing said WD with location information of at least one publicly accessible DRD for selection by said WD;

receiving from said WD at said network resource a selection of a DRD and data selected for rendering at said DRD; and

providing said video data to said DRD after an authorization code provided by said WD is verified by at least one of said DRD or said network resource.

4. The method of claim 3, wherein said DRD further comprises at least one of a printer, a video monitor, an Internet Kiosk, a multimedia projector, or an ATM machine.

5. A system for brokering data between handheld wireless devices and data rendering devices for rendering of the data at selected rendering devices, comprising:

a network resource programmed to:

receive requests from wireless device through a communications network to locate at least one data rendering device located geographically near and lacking physical proximity to said requesting wireless device, wherein said data rendering device is to be used for rendering data selected through said requesting wireless device;

identify physical locations and rendering capabilities of at least one data rendering device that is available to and accessible by the public for said requesting wireless device based on geographic location information for said requesting wireless device as determined by at least one of GPS, network connection, and network triangulation;

provide said requesting wireless device with location information of at least one publicly accessible data rendering device for selection by said requesting wireless device to render the data selected through said requesting wireless device;

receive data rendering device selections from said requesting wireless devices and data selected for rendering at selected data rendering devices; and

provide at least one authorization code to said requesting wireless device, said at least one authorization code for entry at a user interface on at least one of said request on wireless device or on said selected data rendering device once said selected data rendering device are physically located;

wherein said data selected for rendering is transferred at the request of a user of said requesting wireless device to a selected data rendering device from a memory associated with said requesting wireless device, and wherein said data is transferred to said requested data rendering device for rendering and wherein said requested data rendering device renders said data after said at least one authorization code provided by said requesting wireless device is verified by at least one of said network resource and said requested data rendering device.

6. The system of claim 5, wherein said selected data rendering device includes at least one of a printer, a video monitor, an Internet Kiosk, a multimedia projector, or an ATM machine.

## CLAIMS OF U.S. PATENT NO. 9,549,285

1. A system for rendering data provided via a data communications network at the request of a wireless device, comprising:

a server in communication with at least one data rendering device (DRD), said at least one DRD including a user interface for receiving passcodes, the DRD registered with said server to access and receive data over a data communications network at the request of a wireless device (WD) for rendering of the data at the at least one DRD in response to a passcode associated with said WD being entered at the user interface;

memory in said server accessible by said DRD, said memory for securely storing data received by or on behalf of said WD and said passcode associated with said WD; and

wherein said server is configured to receive said data and said passcode associated with said WD from said memory and to render said data after at least one passcode is entered on said user interface that matches said passcode stored in said memory associated with said WD and provided to said DRD.

2. The system of claim 1, wherein said DRD further comprises at least one of a printer, a video monitor, an Internet Kiosk, a multimedia projector, or an automatic teller machine (ATM).

3. The system of claim 1, wherein said passcode is provided wirelessly to said user interface by said WD.

4. The system of claim 1, wherein said passcode is alternatively provided to said sever by said WD, whereafter said data is transferred to said DRD and is rendered.

5. A system for rendering data provided via a data communications network at the request of a wireless device, comprising:

a server in communication with at least one data rendering device (DRD), said at least one DRD including a user interface for receiving passcodes, the DRD registered with said server to access and receive

data over a data communications network at the request of a wireless device (WD) for rendering at the at least one DRD in response to a passcode associated with said WD being entered at the user interface;

memory in said server accessible by said DRD, said memory for securely storing data received by or on behalf of said WD and said passcode associated with said WD; and

wherein said server is configured to enable said DRD to be selected through a wireless communications network by the WD from more than one DRD registered with said server and to receive said data and said passcode associated with said WD from said memory to render said data after at least one passcode is entered on said user interface that matches said passcode stored in said memory, provided to said DRD, and associated with said WD.

6. The system of claim 5, wherein said DRD further comprises at least one of a printer, a video monitor, an Internet Kiosk, a multimedia projector, or an automatic teller machine (ATM).

7. The system of claim 5, wherein said passcode is provided wirelessly to said user interface by said WD.

8. The system of claim 5, wherein said passcode is alternatively provided to said sever by said WD, whereafter said data is transferred to said DRD and is rendered.

9. A system for rendering data provided via a data communications network at the request of a wireless device, comprising:

a server in communication with at least one data rendering device (DRD), said at least one DRD including a user interface for receiving passcodes, the DRD registered with said server to access and receive data over a data communications network at the request of a wireless device (WD) for rendering at the at least one DRD in response to a passcode associated with said WD being entered at the user interface;

memory in said server accessible by said DRD, said memory for securely storing data received by or on behalf of said WD and said passcode associated with said WD; and

wherein said server is configured to receive a DRD locator request from said WD through a wireless communications network to find at least one DRD from among more than one DRD registered with said server that is located near the WD and to enable said DRD to be selected by the WD to receive said data from said memory to render said data after at least one passcode is entered on said user interface that matches said passcode stored in said′ memory, provided to said DRD, and associated with said WD.

10. The system of claim 9, wherein said DRD further comprises at least one of a printer, a video monitor, an Internet Kiosk, a multimedia projector, or an automatic teller machine (ATM).

11. The system of claim 9, wherein said passcode is provided wirelessly to said user interface by said WD.

12. The system of claim 9, wherein said passcode is alternatively provided to said sever by said WD, whereafter said data is transferred to said DRD and is rendered.

13. The system of claim 9, wherein readiness information for said DRD is provided to said server for enabling at least one of said at least one of said server and said WD to determine if delivery and rendering of data can be accomplished by said DRD prior to selecting said DRD for receipt of said data and said passcode.

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-1783

**Short Case Caption** Ortiz & Associates Consulting, LLC v. VIZIO, Inc.

**Filing Party/Entity** VIZIO, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/20/2024

Signature: /s/ Steven W. Hartsell

Name: Steven W. Hartsell

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| VIZIO, Inc. | VIZIO Holding Corp. | VIZIO Holding Corp. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Ryan. A Hargrave | Skiermont Derby LLP | |
| Michael D. Ricketts | Skiermont Derby LLP | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ vii

STATEMENT OF RELATED CASES ........ xii

TABLE OF ABBREVIATIONS ........ xiii

STATEMENT OF THE ISSUES ........ 1

INTRODUCTION ........ 2

COUNTER-STATEMENT OF THE CASE ........ 3

I. The Asserted Patents ........ 3

II. Ortiz's Repeated Failures in Litigation Involving the Asserted Patents ........ 3

III. Ortiz's Deficient Original Complaint Against VIZIO ........ 7

IV. VIZIO's First Motion to Dismiss ........ 8

V. Ortiz's Inadequate First Amended Complaint ........ 10

VI. VIZIO's Second Motion to Dismiss: Addressing Ortiz's Continuing Deficiencies ........ 11

VII. The District Court's Dismissal with Prejudice ........ 12

VIII. VIZIO's Motion for Attorneys' Fees ........ 14

IX. The District Court Grants VIZIO's Fee Motion ........ 17

SUMMARY OF THE ARGUMENT ........ 18

STANDARD OF REVIEW ........ 20

ARGUMENT ........ 21

I. Ortiz Is Precluded from Collaterally Attacking the District Court's Dismissal Order ........ 21

II. Ortiz Is Precluded from Raising Arguments for the First Time on Appeal ........ 23

III. The District Court Did Not Abuse Its Discretion In Finding This Case Exceptional Under Section 285 and Awarding Fees ........ 24

A. Ortiz's Lack of a Viable Damages Theory Constituted an Exceptionally Weak Litigation Position ....25

1. The District Court Properly Considered the Absence of a Viable Damages Theory as Part of Its Totality of the Circumstances Analysis ....25

2. Ortiz Fails to Demonstrate an Abuse of Discretion ....28

a. Ortiz's attempt to shift blame to the district court is unfounded....28

b. Ortiz's sanctions argument is meritless ....31

c. Ortiz's affirmative defense argument is unavailing....32

d. VIZIO did not mislead the district court....33

e. Ortiz's settlement license-related arguments miss the mark....35

f. Ortiz's assertion that it did not have to mark is baseless....38

g. Ortiz's method claim arguments are contrary to law....40

h. Ortiz's due process argument lacks merit....43

i. Ortiz's Rule 11 argument is misplaced....44

B. The District Court Properly Considered Ortiz's Failure to Comply with Discovery Deadlines ....47

1. Ortiz's Attempt to Justify Its Inaction Is Unpersuasive....50

2. Ortiz's Rule 37 Argument Is Misguided....51

C. The District Court Properly Considered Ortiz's Litigation History ....52

D. The District Court Properly Considered Ortiz's Nuisance Value Settlement ....54

IV. Ortiz's Remaining Miscellaneous Arguments Are Unavailing ....56

A. NPE Status Is Not a Shield from Fee Awards Under § 285 ....56

B. Ortiz's Arguments About the Costs of Litigation Do Not Excuse its Exceptional Conduct....57

CONCLUSION & PRAYER FOR RELIEF ........................................................57

# TABLE OF AUTHORITIES

## Cases

*AdjustaCam, LLC v. Newegg, Inc.*,
861 F.3d 1353 (Fed. Cir. 2017) .......... 55

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
6 F.3d 1523 (Fed. Cir. 1993) .......... 10

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) .......... *passim*

*Bayer CropScience AG v. Dow AgroSciences LLC*,
851 F.3d 1302 (Fed. Cir. 2017) .......... 20

*Blackbird Tech LLC v. Health In Motion LLC*,
944 F.3d 910 (Fed. Cir. 2019) .......... 27, 29, 55

*Bowles v. Russell*,
551 U.S. 205 (2007) .......... 21

*ClearValue, Inc. v. Pearl River Polymers, Inc.*,
560 F.3d 1291 (Fed. Cir. 2009) .......... 51

*Colite Int'l Inc. v. Robert L. Lipton, Inc.*,
No. 05-60046-CIV, 2006 WL 8431501 (S.D. Fla. Mar. 9, 2006) .......... 29-30

*CXT Sys., Inc. v. Acad., Ltd.*,
No. 2:18-cv-00171-RWS-RSP, 2020 WL 9936135
(E.D. Tex. Jan. 28, 2020) .......... 41

*Digeo, Inc. v. Audible, Inc.*,
505 F.3d 1362 (Fed. Cir. 2007) .......... 45

*DropStop LLC v. Jian Qing-Zhu*,
No. 2018-1533, 2019 WL 495142 (Fed. Cir. Feb. 8, 2019) .......... 20

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
889 F.3d 1291 (Fed. Cir. 2018) .......... 20

*Eon-Net LP v. Flagstar Bancorp*,
653 F.3d 1314 (Fed. Cir. 2011) .......... 55

*EscapeX IP LLC v. Google LLC*,
No. 22-cv-08711-VC, 2023 WL 5257691 (N.D. Cal. Aug. 16, 2023) ................16

*Finjan, Inc. v. Juniper Networks, Inc.*,
387 F. Supp. 3d 1004 (N.D. Cal. 2019), aff'd, 825 F. App'x 922 (Fed. Cir. 2020) ................36

*FireBlok IP Holdings, LLC v. Hilti, Inc.*,
855 F. App'x 735 (Fed. Cir. 2021) ................27-28

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011) ................43

*Gant v. United States*,
417 F.3d 1328 (Fed. Cir. 2005) ................23

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ................23

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) ................29, 31

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) ................20

*Hall v. Hodgkins*,
305 F. App'x 224 (5th Cir. 2008) ................43

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
572 U.S. 559 (2014) ................20, 49

*Hilgraeve Corp. v. Symantec Corp.*,
265 F.3d 1336 (Fed. Cir. 2001) ................26

*Hologic, Inc. v. Lunar Corp.*,
64 F.3d 678 (Fed. Cir. 1995) ................47

*Huawei Techs. Co. Ltd v. T-Mobile US, Inc.*,
No. 2:16-cv-00055-JRG-RSP, 2017 WL 5165606 (E.D. Tex. Oct. 15, 2017) , *report and recommendation adopted sub nom. Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-cv-0055-JRG-RSP, 2017 WL 5157687 (E.D. Tex. Nov. 7, 2017) ................42

*Huawei Techs. Co. v. TMobile US, Inc.*,
No. 2:16-cv-00052-JRG-RSP, 2017 WL 4183103 (E.D. Tex. Sept. 4, 2017) , *report and recommendation adopted,* No. 2:16-cv-00052-JRG-RSP, 2017 WL 4251365 (E.D. Tex. Sept. 20, 2017) ....................................................41

*Hylete LLC v. Hybrid Athletics*, LLC,
931 F.3d 1170 (Fed. Cir. 2019)....................................................23

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc*.,
876 F.3d 1372 (Fed. Cir. 2017)....................................................31

*Jamieson By and Through Jamieson v. Shaw*,
772 F.2d 1205 (5th Cir. 1985)....................................................31

*Jones v. Robinson Prop. Grp., L.P.*,
427 F.3d 987 (5th Cir. 2005)....................................................30

*Kearns v. Gen. Motors Corp.*,
31 F.3d 1178 (Fed. Cir. 1994)....................................................47

*Lans v. Digital Equip. Corp.*,
252 F.3d 1320 (Fed. Cir. 2001).................................................... 10, 25, 32

*Lovelace v. Software Spectrum Inc*.,
78 F.3d 1015 (5th Cir. 1996)....................................................43

*Miller Mendel, Inc. v. City of Anna, Texas*,
107 F.4th 1345 (Fed. Cir. 2024)....................................................20

*Ming Fang Chen v. Whitaker*,
757 F. App’x 254 (4th Cir. 2018)....................................................54

*Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*,
726 F.3d 1359 (Fed. Cir. 2013)....................................................47

*Norris v. Hearst Tr*.,
500 F.3d 454 (5th Cir. 2007)....................................................43

*Octane Fitness, LLC v. ICON Health & Fitness, Inc*.,
572 U.S. 545 (2014) .................................................... *passim*

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
853 F.3d 1370 (Fed. Cir. 2017)....................................................41

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*,
858 F.3d 1383 (Fed. Cir. 2017) ....................................................................20

*Sage Prod., Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ....................................................................23

*SFA Sys., LLC v. Newegg Inc.*,
793 F.3d 1344 (Fed. Cir. 2015) ............................................................ 45, 47, 53

*Stone Basket Innovations, LLC v. Cook Med. LLC*,
892 F.3d 1175 (Fed. Cir. 2018) ....................................................................53

*Sunless, Inc. v. Selby Holdings, LLC*,
No. 20-cv-00930, 2021 WL 3513871 (M.D. Tenn. Aug. 10, 2021) ....................33

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
726 F.3d 1306 (Fed. Cir. 2013) ....................................................................21

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ....................................................................................43

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
563 F.3d 1271 (Fed. Cir. 2009) ................................................................9, 26

*Traxcell Techs., LLC v. AT&T Corp.*,
No. 2:17-cv-00718-RWS-RSP, 2022 WL 949951
(E.D. Tex. Mar. 29, 2022) ....................................................................... 16-17

*U.S. Philips Corp. v. KXD Tech., Inc.*,
311 Fed. Appx. 344 (Fed. Cir. 2008) ........................................................ 21-22

*United States v. Rivera*,
825 F.3d 59 (1st Cir. 2016) .........................................................................51

*VDPP, LLC v. Volkswagen Grp. of Am., Inc.*,
No. H-23-2961, 2024 WL 3378456 (S.D. Tex. Jul. 11, 2024) ............................17

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
No. 2:17-CV-00456-JRG, 2018 WL 6787356 (E.D. Tex. Nov. 14, 2018).........41

*WPEM, LLC v. SOTI Inc.*,
No. 2:18-CV-00156-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020), aff'd,
837 F. App'x 773 (Fed. Cir. 2020), cert. denied, 141 S. Ct. 2628 (2021). ..........17

*Xiaohua Huang v. Huawei Techs. Co.*,
735 F. App'x 715 (Fed. Cir. 2018) ........ 46, 49

*ZT IP, LLC v. VMware, Inc.*,
No. 3:22-CV-0970-X, 2023 WL 1785769 (N.D. Tex. Feb. 6, 2023) ........ 16

**Statutes**

28 U.S.C. § 1927 ........ 14, 18

35 U.S.C. § 101 ........ 4

35 U.S.C. § 285 ........ *passim*

35 U.S.C. § 287(a) ........ *passim*

**Rules**

Fed. Cir. R. 4(a) ........ 21

Fed. R. App. P. 4(a)(1)(A) ........ 21

Fed. R. App. P. 4(a)(4)(B)(ii) ........ 21

Fed. R. Civ. P. 11 ........ 44, 45, 46, 47

Fed. R. Civ. P. 12(b)(3) ........ 6

Fed. R. Civ. P. 12(b)(6) ........ *passim*

Fed. R. Civ. P. 15(a)(1)(B) ........ 28

Fed. R. Civ. P. 37 ........ 51

**Other Authorities**

N.D. Tex. Misc. Order No. 62 ........ 48, 50, 52

## STATEMENT OF RELATED CASES

There has been no prior appeal to the Federal Circuit or to any other appellate court from this action. Appellee VIZIO, Inc. ("VIZIO") is unaware of any cases pending in this or another court that will directly affect or will be directly affected by this Court's decision here.

## TABLE OF ABBREVIATIONS

| Abbreviation/Short Citation | Reference |
|---|---|
| "Br." | Ortiz's Opening Brief (Dkt. 11) |
| "First Motion" | Appx00140-170 |
| "Second Motion" | Appx00395-425 |
| "Fee Motion" | Appx00597-620 |
| "Dismissal Order" | Appx00012-20 |
| "Exceptional Case Order" | Appx00004-10 |

## STATEMENT OF THE ISSUES

Whether the district court abused its discretion in finding this an "exceptional case" and awarding reasonable attorneys' fees to VIZIO pursuant to 35 U.S.C. § 285 based on the totality of circumstances, which includes: (1) the substantive weakness of Ortiz & Associates Consulting, LLC's ("Ortiz") litigation position where it lacked a viable damages theory from the outset of the case, (2) Ortiz's litigation misconduct where it ignored the district court's deadlines, (3) Ortiz's history of filing and dismissing suits involving the Asserted Patents before or at the motion to dismiss stage, and (4) Ortiz's nuisance value settlement demand.

## INTRODUCTION

This case presents an exceptional instance where the district court properly exercised its discretion under 35 U.S.C. § 285 to award attorneys' fees to VIZIO, Inc. ("VIZIO"). Ortiz & Associates Consulting, LLC's ("Ortiz") claims were legally and factually deficient from the outset. The Asserted Patents had expired long before Ortiz filed suit, rendering any claim for post-suit damages untenable. Yet, Ortiz continued to pursue this baseless litigation, failing to comply with statutory requirements under 35 U.S.C. § 287(a) for pre-suit damages, despite being expressly warned by VIZIO.

The district court, after carefully considering the totality of the circumstances, found Ortiz's litigation to be exceptional. Ortiz ignored fundamental legal principles, refused to comply with discovery obligations, and engaged in bad-faith litigation tactics by demanding a nuisance settlement below the cost of defense. This pattern of conduct, coupled with Ortiz's history of filing similar frivolous lawsuits and then dismissing them before substantive decisions were reached, clearly justified the district court's decision to award fees under § 285. Ortiz now seeks to re-litigate the merits of its case and distract from its egregious conduct, but the district court's ruling was sound, and its award of attorneys' fees should be affirmed in full.

## COUNTER-STATEMENT OF THE CASE

### I. The Asserted Patents

Ortiz filed its patent infringement lawsuit against VIZIO on April 14, 2023, claiming that VIZIO's televisions infringed U.S. Patent Nos. 9,147,299 ("'299 Patent") and 9,549,285 ("'285 Patent") (collectively, the "Asserted Patents"). Appx00046-52. Both patents had expired in 2021. Appx00015; Appx00405-406.

Ortiz alleged that VIZIO infringed all claims of the Asserted Patents. Appx00048-49; Appx00314-315. The '285 Patent contains only system claims (Appx00100), while the '299 Patent includes both system and method claims (Appx00037-38).

### II. Ortiz's Repeated Failures in Litigation Involving the Asserted Patents

Ortiz has an extensive and troubling history of filing patent infringement lawsuits involving the Asserted Patents, all of which failed to progress beyond the early stages of litigation. These cases consistently ended in dismissals, either voluntary or for failure to state a claim, without any substantive legal or factual work being undertaken. Appx00606-609. Below is a summary of these prior lawsuits and their outcomes.

1. *Ortiz & Associates Consulting, LLC v. Roku, Inc.*, No. 1:18-cv-1265-MN (D. Del.): Filed on August 18, 2018, this case involved both Asserted Patents. Appx00634-648. The case was dismissed, with prejudice, on June 5, 2019, days

before a hearing on Roku's Rule 12(b)(6) motion for claiming ineligible subject matter under 35 U.S.C. § 101. Appx00650-652, at Dkts. 9, 17, 19, 20.

2. *Ortiz & Associates Consulting, LLC v. Panasonic Corp. of North America,* No. 1:19-cv-01921 (D. Del.): Filed on October 19, 2019, this case involved the '299 Patent. Appx00655-661. After a few months, and without any substantive entries on the docket, the parties filed two Stipulations to Stay, stating: "The Parties have reached an agreement to resolve all claims asserted in this case against Defendant. In light of the agreement and contemplated dismissal, the Parties have stipulated to stay all deadlines in connection with this litigation . . ." Appx00663; Appx00667. The case was voluntarily dismissed, with prejudice, on May 15, 2020. Appx00671, at Dkt. 11; Appx00674.

3. *Ortiz & Associates Consulting, LLC v. Microsoft Corp.,* No. 1:19-cv-08262 (N.D. Ill.): Filed on December 18, 2019, this case involved the '299 Patent. Appx00676-83. Microsoft filed a Motion to Dismiss for Failure to State a Claim, which was granted on July 19, 2021. *Ortiz & Associates Consulting LLC v. Microsoft Corp.*, No. 19-CV-8262, 2021 WL 3033533, at *1 (N.D. Ill. July 19, 2021). Ortiz elected not to file another amended complaint, leading to the case's closure. Appx00688, at Dkts. 33, 35, 36.

4. *Ortiz & Associates Consulting, LLC v. Hisense Co., Ltd.*, No. 1:12-cv-02193 (N.D. Ill.): Filed on April 8, 2020, this case involved the '299 Patent.

Appx00690-693. The case was voluntarily dismissed with prejudice on December 4, 2020, with no substantive entries on the docket. Appx00697, at Dkt. 25.

5. *Ortiz & Associates Consulting, LLC v. Canon U.S.A., Inc.*, No. 6:21-cv-01177 (W.D. Tex.): Filed on November 12, 2021, this case involved the '285 Patent. Appx00699-707. The case was voluntarily dismissed weeks after Canon filed a Motion to Dismiss. Appx00711, at Dkts. 16, 19.

6. *Ortiz & Associates Consulting, LLC v. Ricoh USA Inc.,* Nos. 6:21-cv-01178 and 6:23-cv-00414 (W.D. Tex.): Filed on November 12, 2021, this case involved the '285 Patent. Appx00714-720. On April 11, 2023, the Court issued an order granting in part and denying in part a Rule 12(b)(6) Motion to Dismiss concerning the First Amended Complaint. Appx00725, at Dkt. 22. Specifically, the Court denied Ricoh's motion on standing in general, but granted the motion as to standing to sue on past damages before February 17, 2016, and as to failure to state a claim. *Ortiz & Assocs. Consulting, LLC v. Ricoh USA, Inc.*, No. 6:21-CV-01178-ADA, 2023 WL 2904583, at *4 (W.D. Tex. Apr. 11, 2023). Ortiz filed a new complaint on June 2, 2023, styled *Ortiz & Associates Consulting, LLC v. Ricoh USA Inc.,* No. 6:23-cv-00414 (W.D. Tex.), involving the '285 Patent. Appx00755. Ricoh filed another motion to dismiss for failure to state at claim on July 28, 2023, and that motion was pending at the time of VIZIO's Fee Motion. Appx00755, at Dkt. 11; Appx00756.

7. *Ortiz & Associates Consulting, LLC v. Netgear, Inc.*, No. 1:22-cv-00613 (D. Del.): Filed on May 9, 2022, this case involved both Asserted Patents. Appx00727-731. On April 5, 2023, a notice of voluntary dismissal was filed following the filing of a Motion to Dismiss for Lack of Prosecution. Appx00736, at Dkts. 18, 20.[1]

8. *Ortiz & Associates Consulting, LLC v. Actiontec Electronics, Inc.*, No. 6:23-cv-00139 (W.D. Tex.): Filed on February 22, 2023, this case involved both Asserted Patents. Appx00739-745. The case was voluntarily dismissed less than a month. Appx00748, at Dkt. 7.

9. *Ortiz & Associates Consulting, LLC v. Epson America, Inc.*, No. 2:23-cv-00308 (E.D. Tex.): Filed on June 26, 2023, this case involved the ’285 Patent. Appx00751. On September 5, 2023, Epson filed a Motion to Dismiss Under Rules 12(b)(3) and 12(b)(6). Appx00751, at Dkt. 9. Before that motion was decided, Ortiz filed a Notice of Voluntary Dismissal. Appx00752, at Dkt. 14.

10. *Ortiz & Associates Consulting, LLC v. Konica Minolta Business Solutions USA Inc.*, No. 6:23-cv-00471 (W.D. Tex.): Filed on June 27, 2023, this case involves the ’285 Patent. Appx00759-763. Konica filed Motion to Dismiss

[1] Netgear subsequently moved to vacate Ortiz’s voluntarily dismissal without prejudice as an attempt to preempt the Court’s consideration of Netgear’s Motion to Dismiss (Appx00736, at Dkt. 22), which argued that the dismissal should be with prejudice. Ortiz ultimately filed a stipulation of dismissal with prejudice. Appx00736, at Dkt. 27.

under Rule 12(b)(6) on October 27, 2023. Appx00766, at Dkt. 10. That motion was pending at the time of VIZIO's Fee Motion.

11. *Ortiz & Associates Consulting, LLC v. Lexmark International, Inc.*, No. 1:23-cv-01646 (D. Colo.): Filed on June 28, 2023, this case involves the '285 Patent. Appx00769-773. No responsive pleadings were filed by Lexmark at the time of VIZIO's Fee Motion. Appx00775-777.

*None* of the many lawsuits initiated by Ortiz involving the Asserted Patents progressed beyond the motion to dismiss stage.

## III. Ortiz's Deficient Original Complaint Against VIZIO

Ortiz's original Complaint was fundamentally deficient, lacking critical details about the asserted claims and failing to meet basic pleading standards. For instance, Ortiz accused VIZIO of indirect and willful infringement but failed to establish a critical prerequisite: pre-suit knowledge of the Asserted Patents. Appx00048-51. Instead, Ortiz admitted that VIZIO's knowledge of the patents began "from at least the filing date of the lawsuit," which occurred long after the expiration of the Asserted Patents. Appx00048, at ¶10; Appx00050, at ¶17. This concession fatally undermined Ortiz's indirect and willful infringement claims.

Additionally, Ortiz's reliance on claim 1 of the Asserted Patents to allege infringement was flawed. Appx00074-81; Appx00102-108. Ortiz's claim charts were incomplete, failing to address multiple limitations in the claims, which caused

the Complaint to fall woefully short of the *Iqbal/Twombly* pleading standards for direct infringement claims. Appx00156-161.

Further compounding its deficiencies, Ortiz included a generic prayer for damages. Appx00050-51. However, because the Asserted Patents had already expired before the lawsuit, Ortiz was legally barred from seeking any ongoing or future damages. Moreover, the Complaint failed to plead compliance with, or even mention, 35 U.S.C. § 287(a), which is required to seek pre-suit damages for the asserted claims. Further, Ortiz never plead that VIZIO had pre-suit knowledge of the Asserted Patents instead admitting that knowledge of the Asserted Patents began "from at least the filing date of the lawsuit," which was after the expiration of the Asserted Patents meaning the notice exception under § 287(a) is not applicable (nor has Ortiz ever made such an argument). Appx00048, at ¶10; Appx00050, at ¶17. These failures rendered Ortiz's claims for pre-suit damages legally baseless from the outset.

## IV. VIZIO's First Motion to Dismiss

In view of the glaring deficiencies in Ortiz's original Complaint, VIZIO promptly moved to dismiss on several grounds. Appx00140-170 ("First Motion"). VIZIO's First Motion outlined Ortiz's failure to: (1) plead any facts establishing VIZIO's pre-suit knowledge of the Asserted Patents, a prerequisite for indirect and willful infringement; (2) satisfy the *Iqbal/Twombly* pleading standard for direct

infringement claims; and (3) plead compliance with the marking statute, a prerequisite for recovering pre-suit damages under 35 U.S.C. § 287(a) for system and device claims.

VIZIO's First Motion relied on this Court's unequivocal holding that a plaintiff must plead compliance with § 287(a) to support a claim for pre-suit damages. Appx00161-166 (citing and discussing *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017)). VIZIO also cited clear precedent that dismissals with prejudice function as licenses by operation of law, which VIZIO contends triggers the marking requirement for the accused products subject to the license. Appx00163-164 (citing *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009)). Based on these precedents, VIZIO argued that the prior dismissals with prejudice of cases against Roku (for "Roku TV" products) and Panasonic (for the "Viera line of televisions") triggered an obligation for Ortiz to ensure and plead compliance with the marking requirements of § 287(a). Appx00163-164.

Furthermore, VIZIO's First Motion preemptively dismantled any attempt by Ortiz to escape the marking requirements for the '299 Patent. VIZIO cited this Court's long-standing precedent that "[w]here the patent contains both apparatus and method claims, however, to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so

if it intends to avail itself of the constructive notice provisions of section 287(a)." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993); Appx00164-165. Texas district courts have repeatedly upheld that plaintiffs asserting both method and apparatus claims must comply with the marking statute; dropping apparatus claims at a later stage does not absolve this obligation. Appx000165-166 (citing cases).

Finally, VIZIO explicitly cited this Court's opinion in *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001), for the proposition that complaints where no damages can be awarded are subject to dismissal. Appx00162-163.

## V. Ortiz's Inadequate First Amended Complaint

In response to VIZIO's First Motion, Ortiz filed a First Amended Complaint ("FAC"), ostensibly to "address issues alleged by Vizio in its Motion to Dismiss." Appx00787. However, the FAC merely reinforced Ortiz's pattern of deficient pleading. While the FAC dropped Ortiz's meritless claims for indirect and willful infringement (*see* Appx00312-316 *compared with* Appx00047-50), it otherwise suffered from the same fundamental flaws as the original Complaint. Crucially, Ortiz once again failed to plead compliance with the marking statute, despite VIZIO having specifically identified this deficiency and having provided binding authority requiring Ortiz to do so. Appx00312-316. Additionally, the FAC did not

correct the previous failure to articulate any viable direct infringement claims. Appx00313-315; Appx00340-346; Appx00369-373.

In a "Response" to VIZIO's First Motion filed the same day as the FAC, Ortiz attempted to sidestep the marking statute by claiming that, as a non-practicing entity, it had no obligation to comply with § 287(a) because it did not manufacture or sell patented articles. Appx00377. However, Ortiz's single-paragraph argument ignored binding authority from this Court cited by VIZIO, and failed to address any of VIZIO's substantive legal arguments regarding the marking requirement for licensees. Ortiz's refusal to confront well-established legal principles only underscored the baselessness of its case.[2]

## VI. VIZIO's Second Motion to Dismiss: Addressing Ortiz's Continuing Deficiencies

Despite having had the opportunity to amend its original, defective complaint, Ortiz's FAC utterly failed to correct fundamental issues VIZIO identified in its First Motion to Dismiss. Ortiz's continued disregard of both legal requirements and specific deficiencies raised by VIZIO necessitated the filing of VIZIO's Second Motion to Dismiss. Appx00395-425 ("Second Motion").

The Second Motion reiterated many of the same fatal flaws that VIZIO had identified earlier. Most notably, Ortiz still failed to plead compliance with the

[2] The district court subsequently issued an electronic Order finding the FAC mooted the First Motion. Appx00381.

marking statute under 35 U.S.C. § 287(a). As VIZIO made clear in both motions, compliance with § 287(a) is unequivocally required when asserting both apparatus and method claims—failure to do so is fatal to a claim for damages (*compare* Appx00161-166 *with* Appx00407-413). Ortiz's FAC ignored this binding authority and required that VIZIO reassert these arguments.

In response to VIZIO's Second Motion, Ortiz made a cursory argument that, as a non-practicing entity, it was not obligated to comply with the marking statute. Appx00574-575. This position ignored relevant case law and failed to address VIZIO's detailed arguments concerning the need for compliance with § 287(a) as it relates to Ortiz's licensees—an issue that had already been exhaustively briefed in VIZIO's First Motion. Ortiz's disregard for controlling legal authority demonstrated an ongoing pattern of avoidance, rather than any legitimate defense of its claims.

## VII. The District Court's Dismissal with Prejudice

On November 11, 2023, the district court granted VIZIO's Second Motion to Dismiss. Appx00012-20 ("Dismissal Order"). The district court confirmed that Ortiz could not recover any ongoing or future damages because the Asserted Patents had expired before Ortiz filed suit. Appx00015.

Crucially, the district court also found that Ortiz's prior stipulated dismissals with prejudice in cases involving Roku and Panasonic effectively functioned as

licenses and, under well-established law, gave rise to an obligation for Ortiz to ensure that the accused products in those cases were properly marked under the provisions of § 287(a). Appx00017-18. Because Ortiz failed to plead any facts—either in its original Complaint or in the FAC—showing how it complied with the marking statute in light of those dismissals, Ortiz's claims for pre-suit damages were unsustainable. Appx00017-18.

Moreover, the district court held that even if the prior dismissals with prejudice did not trigger marking obligations, Ortiz was still required to plead that it sold no patented articles and had complied with all statutory requirements in its complaints. Appx00018-19. This failure to meet basic pleading requirements provided a second, "independent basis" for the district court's dismissal. Appx00018. Ortiz's failure to address this deficiency, even after VIZIO had clearly pointed it out in its First Motion, further underscored the lack of legal merit in its claims. Appx00019.

Thus, the district court granted VIZIO's Second Motion with prejudice, recognizing that Ortiz had been given more than sufficient opportunity to correct its errors, but had failed to do so. Appx00019. A final judgment was entered on November 1, 2023. Appx00011.

Notably, Ortiz did not appeal the dismissal with prejudice or the final judgment. *See* Br., 6 at n.22 ("Ortiz does not agree that the case was properly

dismissed but it was **and that was not appealed**.") (emphasis added)); 17 ("Ortiz Did Not Appeal the Dismissal of the District Court Case…" and "when faced with the dismissal with prejudice, Ortiz decided not to appeal that Order".)

## VIII. VIZIO's Motion for Attorneys' Fees

On November 11, 2023, VIZIO filed its Motion for Attorneys' Fees and Non-Taxable Costs under 35 U.S.C. § 285, 28 U.S.C. § 1927 and the Court's inherent power ("VIZIO's Fee Motion"), identifying multiple grounds for declaring this case "exceptional." Appx00597-777; *see also* Appx00798-809.

This case is plainly exceptional under § 285 because Ortiz knew, or should have known, from the outset that its case was objectively baseless; Ortiz lacked a viable damages theory from the moment it filed suit. Appx00611-613. Because the Asserted Patents had already expired, Ortiz was legally precluded from seeking post-suit damages. Additionally, Ortiz had a clear obligation, well-established in patent law, to plead compliance with § 287(a) to support any claim for pre-suit damages. Yet Ortiz, despite having two opportunities, failed to plead or address the marking statute entirely. This failure alone justifies a finding of exceptional conduct. Appx00603-604; Appx00801-802.

Ortiz compounded its baseless case by asserting that the dismissals with prejudice in prior cases involving Roku and Panasonic somehow did not give rise to marking obligations. Ortiz ignored the law thoroughly cited in VIZIO's briefs

and failed to produce any legal authority to support its position. Ortiz's deliberate refusal to engage with the clear marking requirements and its disregard of relevant legal precedent further underscored the exceptional nature of its conduct. Appx00603-604; Appx00802-803.

Beyond the marking issue, Ortiz's litigation tactics independently justify an award of attorneys' fees under § 285. Throughout the case, Ortiz repeatedly failed to comply with basic litigation deadlines. Ortiz did not serve initial disclosures or infringement contentions, ignoring the deadlines in the district court's local rules. Appx00613. Remarkably, despite the discovery period being open for nearly five months, Ortiz did not serve a single discovery request. Even more egregious, Ortiz's failure to serve infringement contentions meant that several key deadlines in the case, including all claim construction deadlines, went untriggered, effectively paralyzing the litigation and rendering all remaining deadlines moot. Appx00613-614.

Ortiz's failure to meet the district court's deadlines was not a mere oversight—it was a deliberate tactic. VIZIO had repeatedly put Ortiz on notice of these failures months before the case was dismissed. *See*, *e.g.*, Appx00594, n.4; Appx00632. Such flagrant disregard for the rules of procedure in a case Ortiz filed is, by any reasonable standard, unjustifiable.

Rather than litigating this case on the merits, Ortiz sought to exploit the high costs of defending patent litigation to extract a nuisance settlement. Ortiz demanded that VIZIO pay an amount less than the cost of defense for a license to its expired patents—despite not serving infringement contentions or propounding any discovery. Appx00605; Appx00614; Appx00626, ¶7; Appx00632. This blatant attempt to coerce a nuisance-value settlement, coupled with Ortiz's complete failure to comply with basic procedural requirements and court deadlines, demonstrated bad faith and further supported the exceptional nature of this case.

Moreover, Ortiz has a well-documented history of filing patent infringement suits involving the Asserted Patents, only for the cases to end before any substantive work was done—either through voluntary dismissals or dismissals for failure to state a claim. This pattern of litigation abuse strongly supports VIZIO's fee request. Appx00614-616; Appx633-777.[3]

---

[3] VIZIO also alerted the district court to Ortiz's counsel's history of being sanctioned by courts for bad faith litigation tactics. Appx00615-618. For example, just months before VIZIO was awarded attorneys' fees in this case, Ortiz's counsel was ordered to pay Google $191,302 in attorneys' fees and costs based largely on bad faith conduct. *EscapeX IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2023 WL 5257691, at *2 (N.D. Cal. Aug. 16, 2023) (EscapeX IP LLC represented by Ramey, LLP). Courts have consistently recognized the exceptional nature of cases litigated by entities represented by Ortiz's counsel and have awarded fees accordingly. Appx006125. In *ZT IP*, the court awarded $92,130 in attorneys' fees after finding that ZT IP (represented by Ramey LLP) failed "to conduct an adequate pre-filing investigation and act diligently when it became aware that its investigation was inadequate." *ZT IP, LLC v. VMware, Inc.*, No. 3:22-CV-0970-X, 2023 WL 1785769, at *2-5 (N.D. Tex. Feb. 6, 2023). Similarly, in *Traxcell Techs.,*

## IX. The District Court Grants VIZIO's Fee Motion

On February 27, 2024, the district court granted VIZIO's Fee Motion in part, finding this case to be exceptional under § 285. Appx00004-10 ("Exceptional Case Order"). In reaching this decision, the district court considered the totality of the circumstances and found several compelling reasons to award fees to VIZIO. Appx00008.

First, the district court concluded that Ortiz had been specifically apprised—via VIZIO's First Motion—of the need to plead compliance with 35 U.S.C. § 287(a) to support its claim for pre-suit damages. Appx00006. Despite this clear legal requirement, Ortiz unreasonably failed to do so not once, but twice, compounding its neglect.

---

*LLC. v. AT&T Corp.*, Ortiz's counsel pursued "objectively baseless infringement theories" and was sanctioned for exceptional litigation conduct. *Traxcell Techs., LLC v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2022 WL 949951, at *4 (E.D. Tex. Mar. 29, 2022), report and recommendation adopted by, 2022 WL 18507378 (E.D. Tex. Dec. 22, 2022). The courts in *WPEM* and other cases have similarly recognized the need to sanction Ortiz's counsel for their repeated bad faith actions in patent litigation. *WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, at *3-6, 8 (E.D. Tex. Feb. 4, 2020), aff'd, 837 F. App'x 773 (Fed. Cir. 2020), cert. denied, 141 S. Ct. 2628 (2021). After fees were awarded in this case, Ortiz's counsel was sanctioned under § 285 by another court based on similar facts to this case, where the plaintiff "could not plausibly and in good faith allege marking compliance" for an expired patent, and therefore pursued a case lacking a viable damages theory. *VDPP, LLC v. Volkswagen Grp. of Am., Inc.*, No. H-23-2961, 2024 WL 3378456, *3-4 (S.D. Tex. Jul. 11, 2024).

Second, the district court determined that Ortiz's overall litigation conduct was unreasonable, noting its repeated failure to meet procedural obligations and comply with court-imposed deadlines. Appx00006-7.

Third, Ortiz's pattern of filing lawsuits involving the Asserted Patents, only to dismiss them before addressing the merits, was a relevant factor in the § 285 analysis. Appx00007. The district court emphasized that Ortiz's settlement tactics—designed to extract nuisance settlements without testing the merits—underscored the baselessness of its claims and the exceptional nature of its conduct in this case. Appx00007.

While the district court granted VIZIO's request for fees under § 285, it declined to award fees against Ortiz's counsel under 28 U.S.C. § 1927. Appx00010. Nonetheless, the district court's findings under § 285 were more than sufficient to justify the fee award.

Following this ruling, the district court requested additional briefing on the amount of fees and costs to be awarded. Appx00010. After reviewing the submissions, the district court awarded VIZIO $161,777.53 in attorneys' fees and costs. Appx00003. Ortiz did not appeal the amount of the fee award.

## SUMMARY OF THE ARGUMENT

The district court's award of attorneys' fees under 35 U.S.C. § 285 should be affirmed. The district court's decision was based on well-established legal

principles and supported by the totality of the circumstances, including Ortiz's lack of a viable damages theory, its repeated disregard for litigation deadlines, and its pattern of dismissing cases involving the Asserted Patents before substantive rulings could be made.

First, Ortiz's claims were doomed from the start because the Asserted Patents had expired, foreclosing any opportunity for post-suit damages. Ortiz's only potential remedy—pre-suit damages—was similarly foreclosed by Ortiz's repeated failure to plead compliance with § 287(a). VIZIO identified this critical deficiency from the outset of the case, but Ortiz failed to amend its pleadings to address it, demonstrating an objectively baseless litigation position that fully justified the district court's finding of exceptionality.

Second, Ortiz engaged in litigation misconduct by ignoring deadlines, failing to serve initial disclosures, and withholding infringement contentions, all of which frustrated the litigation process. The district court properly considered this pattern of conduct as part of its analysis under § 285.

Third, Ortiz's settlement demand was clearly designed to exploit the high cost of patent litigation to extract a nuisance value settlement. Ortiz demanded far less than the cost of defending the case, reinforcing the district court's conclusion that the lawsuit was not pursued in good faith.

Finally, Ortiz's attempts to challenge the district court's findings on appeal are unavailing. Ortiz raises new arguments that were not presented to the district court, and none of its points meet the standard for overturning the district court's discretionary decision. The fee award should therefore be affirmed in all respects.

## STANDARD OF REVIEW

This Court "review[s] all aspects of a district court's § 285 determination for an abuse of discretion, including its exceptional case determination." *Miller Mendel, Inc. v. City of Anna, Texas*, 107 F.4th 1345, 1350 (Fed. Cir. 2024) (citing *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1387 (Fed. Cir. 2017)); *DropStop LLC v. Jian Qing-Zhu*, No. 2018-1533, 2019 WL 495142, at *4 (Fed. Cir. Feb. 8, 2019).

A district court abuses its discretion when it makes "a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017) (citing *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 n.2 (2014)).

This Court generally "give[s] great deference to the district court's exercise of discretion in awarding fees." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1307 (Fed. Cir. 2018); *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017) ("[S]uch judgments, in light of the trial court's

'superior understanding of the litigation,' are entitled to substantial deference on appeal."); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013) (a district court "with its first-hand knowledge of the parties and their positions, should not be unduly second-guessed." *Taurus IP, LLC v. Daimler Chrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013).

## ARGUMENT

### I. Ortiz Is Precluded from Collaterally Attacking the District Court's Dismissal Order

Ortiz is foreclosed from appealing the Dismissal Order. Ortiz missed its 30-day deadline to file a notice of appeal following entry of the Dismissal Order on November 1, 2023. (Appx00012-20). *See* Fed. R. App. P. 4(a)(1)(A); Fed. R. App. P. 4(a)(4)(B)(ii); Fed. Cir. R. 4(a). Instead, nearly five months later, on March 26, 2024, Ortiz filed its first Notice of Appeal challenging ***only*** the Exceptional Case Order. Appx000865-866. Ortiz's Amended Notice of Appeal, filed on April 24, 2024, still did not reference the Dismissal Order. Appx00867-868. Then, on April 26, 2024, Ortiz filed a Second Amended Notice of Appeal filed on April 26, 2024, mentioning the Dismissal Order for the first time, however, this filing was untimely and therefore ineffective with respect to the Dismissal Order. Appx000869-870. Ortiz's failure to timely file a notice of appeal regarding the Dismissal Order deprives this Court of jurisdiction. *Bowles v. Russell*, 551 U.S. 205, 213 (2007); *U.S. Philips Corp. v. KXD Tech., Inc.*, 311 Fed. Appx. 344, 345

(Fed. Cir. 2008) ("If the appeal is untimely, we must dismiss for lack of jurisdiction. The requirement cannot be waived and we cannot toll it on equitable grounds.").

Ortiz appears to recognize that it cannot appeal the Dismissal Order, as it repeatedly stated as much in its brief. (*See* Br., 3, 5, 6 at n. 22, 17.) However, despite these clear concessions, Ortiz repeatedly takes issue with the Dismissal Order, attempting to introduce new evidence and arguments related to the dismissal that it did not raise in the district court. For example, Ortiz states: "Ortiz does not agree that the case was properly dismissed…" (Br., 6 at n. 22); "Ortiz should have been given a chance to amend as it requested" (Br., 20); "to the extent necessary, Ortiz **will limit its claims of infringement to method claims** and thereby remove any requirement for marking" (Br., 21) (emphasis added); and "Ortiz **will develop evidence** in discovery to either show that the alleged unmarked product does not practice the Patents-in-suit or that Ortiz has substantially complied with the marking statute" (Br., 21-22) (emphasis added). These statements suggest that Ortiz is attempting, at least indirectly, to re-litigate the merits of the Dismissal Order.

To the extent Ortiz's statements are more than mere imprecise language or inartful drafting, any such attempt to collaterally attack the Dismissal Order is indisputably precluded. Ortiz has foregone its opportunity to contest the dismissal,

and it is barred from introducing new evidence or arguments that could, and should, have been raised in the district court proceedings. The Dismissal Order is final, and Ortiz's continued references to evidence it intends to submit or arguments it believes it could now make are irrelevant to the present appeal, which solely concerns the § 285 fee award.

## II. Ortiz Is Precluded from Raising Arguments for the First Time on Appeal

It is well-established that "federal appellate courts do not consider issues 'not passed upon below' or entertain arguments not presented to the lower tribunal." *Hylete LLC v. Hybrid Athletics*, LLC, 931 F.3d 1170, 1174 (Fed. Cir. 2019); *see also Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005) ("Arguments not made in the court or tribunal whose order is under review are normally considered waived."); *Sage Prod., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("appellate courts do not consider a party's new theories, lodged first on appeal"). None of the narrow exceptions to this general rule apply here. *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322–23 (Fed. Cir. 2008); *see also Hylete*, 931 F.3d at 1174.

Throughout its brief, Ortiz improperly raises numerous new issues that were never presented to the district court. Ortiz failed to meet its burden in the lower court and it cannot now, for the first time on appeal, attempt to argue points that could have been addressed in its initial pleadings or during the district court

proceedings. The prudential considerations outlined by the courts simply do not support reviewing any of Ortiz's new arguments at this stage.

Ortiz's attempt to introduce new arguments runs counter to the fundamental principles of appellate review. This Court has consistently rejected such tactics, and all of Ortiz's newly raised arguments should be similarly rejected here.

## III. The District Court Did Not Abuse Its Discretion In Finding This Case Exceptional Under Section 285 and Awarding Fees

Under *Octane Fitness*, a district court is authorized to find a case "exceptional" if it "stands out from the rest" based on either the substantive weakness of a party's litigation position or the unreasonable manner in which the case was litigated, as determined by the totality of the circumstances. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). District courts are granted broad discretion in making this determination on a case-by-case basis. *Id*.

Here, the district court correctly exercised its discretion, carefully weighing the totality of the circumstances before concluding that this case was exceptional and merited an award of fees under § 285. The court identified several compelling reasons for its decision, including: (1) Ortiz's lack of a viable damages theory, (2) Ortiz's litigious history, (3) Ortiz's repeated failure to comply with discovery deadlines, and (4) Ortiz's bad-faith settlement tactics, evidenced by its settlement demand far below the cost of defense. Appx00008. Each of these findings was

firmly grounded in law and supported by the record. Therefore, the district court did not abuse its discretion.

### A. Ortiz's Lack of a Viable Damages Theory Constituted an Exceptionally Weak Litigation Position

#### 1. The District Court Properly Considered the Absence of a Viable Damages Theory as Part of Its Totality of the Circumstances Analysis

*Octane Fitness* explicitly allows a district court to consider "the substantive strength of a party's litigating position" when determining whether a case "stands out from others." 134 S.Ct. at 1756. Here, the Asserted Patents expired years before Ortiz initiated litigation, meaning Ortiz knew—or should have known—that it was barred from recovering post-suit damages. Thus, Ortiz's only potential remedy was pre-suit damages. However, Ortiz's failure to plead compliance with the marking statute under 35 U.S.C. § 287(a) foreclosed recovery of pre-suit damages.

This Court has made it abundantly clear that "the patentee bears the burden of pleading and proving compliance with § 287(a)'s marking requirement." *Arctic Cat*, 876 F.3d at 1366. VIZIO promptly apprised Ortiz of its obligation to plead compliance with the marking statute, citing binding authority that cases lacking a viable damages theory must be dismissed. *See Lans*, 252 F.3d at 1328 (holding that a failure to comply with  287(a) precludes recovery of damages). Despite these

clear warnings, Ortiz *twice* failed to plead compliance with § 287(a). Appx00046-52; Appx00312-316; Appx00019.

Remarkably, even after VIZIO highlighted these fatal defects and cited controlling case law, Ortiz continued to ignore the marking issue entirely in its FAC. Ortiz's obstinate refusal to address this fundamental flaw left Ortiz without a legally viable damages theory.

The district court agreed with VIZIO's position, dismissing the case on two independent grounds. First, the district court held that Ortiz's prior stipulated dismissals with prejudice in cases against Roku and Panasonic effectively functioned as licenses to the Asserted Patents for the Roku TV products and Panasonic Viera products accused in those cases. Appx00017. The district court noted this Court's recognition that a non-exclusive patent license is equivalent to a covenant not to sue, citing *TransCore*, 563 F.3d at 1275, and *Hilgraeve Corp. v. Symantec Corp*., 265 F.3d 1336, 1346 (Fed. Cir. 2001). The district court further explained that other courts have extended this principle to conclude that dismissals with prejudice function as the equivalent of licenses. Appx00018. As such, Roku and Panasonic were deemed licensees for the purposes of § 287(a) and, because Ortiz failed to plead compliance with the marking statute, it was barred from recovering any pre-suit damages.

Second, even if the prior dismissals did not function as licenses, Ortiz's failure to even attempt to plead its own compliance with the marking statute provided an independent basis for dismissal. Appx00018 (citing *Arctic Cat*, 876 F.3d at 1366). This independent ground further confirmed that Ortiz had no viable damages theory.

In its Fee Motion, VIZIO argued that Ortiz's case was doomed from the start due to its inability to present a legally cognizable damages theory, and that Ortiz's repeated failures to address marking were a clear indication that Ortiz's position lacked substantive merit. Appx00611-612. Contrary to Ortiz's claim that its FAC was meant to address issues raised by VIZIO (Appx00787), the record reflects that Ortiz did nothing to address marking. *Compare* Appx00046-52 *with* Appx00312-316.

The district court correctly concluded that the "substantive weakness of Ortiz's litigation position," combined with the other factors, justified finding this case exceptional under the totality of the circumstances. Appx00008. The district court's determination that Ortiz's position was objectively weak is well-supported by both the facts and the law. *See Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 914-16 (Fed. Cir. 2019) (affirming an award of fees where the plaintiff's litigation position lacked substantive strength and finding no abuse of discretion); *FireBlok IP Holdings, LLC v. Hilti, Inc.*, 855 F. App'x 735, 739 (Fed.

Cir. 2021) ("The strength of a party's litigation position is what is relevant to an exceptional case determination, not the correctness or success of that position.").

### 2. Ortiz Fails to Demonstrate an Abuse of Discretion

Throughout its opening brief, Ortiz attempts to justify its failures with a series of excuses, none of which overcomes the substantial deference and discretion afforded to the district court.

#### a. Ortiz's attempt to shift blame to the district court is unfounded

Ortiz repeatedly asserts that it "was not given a chance to amend…" (Br., 15, 17, 19), but this is plainly false. Ortiz exercised its right to amend under Fed. R. Civ. P. 15(a)(1)(B), filing its FAC with full knowledge of the issues raised in VIZIO's First Motion to Dismiss. Ortiz's argument here represents nothing more than an impermissible collateral attack on the Dismissal Order, not the Exceptional Case Order, and thus fails on its face. (*See* Argument (I).)

Ortiz further argues that it "did not have any guidance from the District Court" regarding the need to amend its pleading (Br., 16) and suggests that the dismissal with prejudice unfairly denied it the opportunity to comply with the court's reasoning articulated in the Dismissal Order. This is also baseless. As the district court correctly noted, litigants are not entitled to handholding from the court regarding their legal obligations, specifically, courts are "not obliged to advise [litigants] of the weaknesses in [their] litigation position." Appx00006

(quoting *Blackbird*, 944 F.3d at 916). The law that Ortiz needed to follow was not only clear, but it was also repeatedly brought to Ortiz's attention by VIZIO. Ortiz's claim that it lacked guidance from the district court merely attempts to shift blame for its own neglect.

What "guidance" Ortiz expected from the district court also remains unclear. The Dismissal Order was rooted in the binding legal precedents VIZIO cited in both of its motions to dismiss. As the plaintiff, Ortiz was responsible for knowing and applying the law, including this Court's clear precedent regarding pleading compliance with the marking statute. Its failure to do so, and its decision to twice omit necessary marking allegations from its complaint cannot be attributed to any imagined failure of the district court to provide Ortiz "guidance." Ortiz's insistence that it was entitled to yet another opportunity to correct its pleading deficiencies is unfounded and meritless.

Ortiz's failure to include any allegations regarding marking in its original complaint, or in its FAC, reflects a fundamental lack of diligence. Neither the district court nor VIZIO are responsible for Ortiz's inability (or refusal) to file a legally sufficient complaint. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 255 (5th Cir. 2003) ("[A] district court's responsibilities do not include instructing ostensibly sophisticated [] counsel how to plead an actionable complaint."); *see also Colite Int'l Inc. v. Robert L. Lipton, Inc.*, No. 05-60046-CIV, 2006 WL

8431501, at *2 (S.D. Fla. Mar. 9, 2006) (finding no authority requiring a district court to offer legal advice on how to plead a claim prior to dismissal with prejudice).

Even if Ortiz was somehow unaware of the marking requirements before filing suit, it was undeniably apprised of them in VIZIO's First Motion to Dismiss. Appx00161-166. Yet Ortiz filed two defective complaints in a row, each devoid of any mention of marking and, thus, lacking a viable damages theory. This repeated failure was not merely negligent—it unreasonably stands out.

Given these facts, the district court's decision to dismiss the case with prejudice without entertaining a third complaint from Ortiz was entirely justified as "[d]ecisions concerning motions to amend are entrusted to the sound discretion of the district court." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotation marks and citations omitted). In exercising this discretion, courts may consider several factors, including undue delay, bad faith, repeated failures to cure deficiencies, and futility of amendment. *Id*.

Here, Ortiz ignored clear legal requirements and failed to cure the known deficiencies in its pleadings when given an opportunity to do so. The district court was well within its discretion in denying Ortiz a *third* opportunity to amend its complaint. There is no abuse of discretion where a plaintiff is given one opportunity to amend but fails to correct the deficiencies, especially when another

amendment would be futile. *Goldstein*, 340 F.3d at 254-55; *see also Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) (finding no abuse of discretion when denying leave to amend due to repeated failures to cure deficiencies).

**b. Ortiz's sanctions argument is meritless**

Ortiz claims that the "sanction" of dismissal "was sufficient and no further sanction under Section 285 was warranted." (Br., 15.) Ortiz seems to suggest that, once a case is dismissed, fees should not be awarded under any circumstances. This argument is not only unsupported but fundamentally flawed.

First, Ortiz fails to cite any legal authority for its novel and unfounded proposition which, if accepted, would effectively prevent courts from awarding fees when dismissing the exact sort of baseless or unreasonable cases § 285 is designed to address.

Second, this Court has repeatedly affirmed fee awards under § 285, even when the underlying dismissal was based on Rule 12(b)(6) or judgment on the pleadings. For example, in *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1373 (Fed. Cir. 2017), this Court upheld a fee award following a judgment on the pleadings, recognizing that even a dismissal can support a finding that a case is exceptional under § 285. Ortiz's attempt to insulate itself from fees simply because the case was dismissed is baseless and should be rejected.

#### c. Ortiz's affirmative defense argument is unavailing

Ortiz argues that § 287(a) is a limitation on damages and not an affirmative defense, and therefore dismissal was not warranted. (Br., 18.) This argument fails for several reasons.

First, this is yet another impermissible collateral attack on the Dismissal Order by Ortiz, and is thus irrelevant to the present appeal of the Exceptional Case Order. (*See* Argument (I).) Further, this argument was not raised in Ortiz's response to VIZIO's Fee Motion. (*See* Argument (II).)

Second, this Court has affirmed the dismissal of complaints where, as here, the plaintiff cannot recover any damages due to its failure to meet the statutory requirements for seeking relief. For example, in *Lans*, 252 F.3d at 1328, this Court upheld a dismissal where the plaintiff failed to plead a viable damages theory in light of § 287(a). VIZIO's citation to *Lans* in its First Motion put Ortiz on notice that failing to plead a viable damages theory in the FAC could result in dismissal; a precedent Ortiz ignored at its own peril. Appx00162. The district court correctly concluded that Ortiz's failure to plead a cause of action for which any relief could be awarded warranted dismissal.

Finally, Ortiz attempts to invoke *Arctic Cat* by arguing that noncompliance with § 287(a) is merely a limitation on damages and not grounds for dismissal at the pleading stage. (Br., 18.) This is a gross misreading. The procedural posture in

*Arctic Cat*—a post-trial motion for judgment as a matter of law—was significantly different from the motion to dismiss at the pleading stage presently at issue. *Arctic Cat*, 876 F.3d at 1357. Here, the district court was well within its authority to dismiss the case because Ortiz's repeated failure to plead compliance with § 287(a) meant Ortiz lacked a viable damages theory. Further, courts have held that a Rule 12(b)(6) motion is an appropriate mechanism to seek dismissal of claims for damages where the plaintiff has failed to comply with the marking statute. *See Sunless, Inc. v. Selby Holdings, LLC*, No. 20-cv-00930, 2021 WL 3513871, at *4 (M.D. Tenn. Aug. 10, 2021) ("[A] Rule 12(b)(6) motion is an appropriate mechanism to request the dismissal of a request for past damages based on the defendant's noncompliance with the marking statute.").

**d. VIZIO did not mislead the district court**

Ortiz contends that VIZIO's briefing "intentionally misled" the district court by arguing that a dismissal with prejudice functions as a license for the purpose of triggering the marking statute. (Br., 18.)

First, this is yet another collateral attack on the Dismissal Order. Ortiz failed to timely file a notice of appeal of the Dismissal Order and, thus, cannot now challenge the district court's substantive ruling regarding the dismissal of its claims. (*See* Argument (I).) Ortiz's arguments regarding the Dismissal Order are improper and irrelevant to the present appeal. (*See* Argument (II).)

Second, both VIZIO and the district court relied on well-established legal authority to support the position that a dismissal with prejudice functions as a license for purposes of § 287(a). Appx00016-18; Appx00163-164; Appx00409-413. Ortiz concedes that "a dismissal with prejudice may function as a *de facto* license" (Br., 18), yet it attempts to argue that such a license does not trigger the marking requirement. This is attorney argument unsupported by any legal authority. Ortiz offers no reason why a license arising by operation of law should be treated any differently than a conventional license when it comes to the marking statute.

Third, even if a dismissal with prejudice did not function as a license, the district court correctly held that *Ortiz's failure to plead compliance with the marking statute* provided an entirely independent basis for dismissal. Appx00018. Ortiz fails to address or refute this independent basis in its brief. The district court's decision rested on established law, and Ortiz's arguments to the contrary are meritless.

Fourth, Ortiz's assertion that VIZIO "never identified any specific products licensed by Ortiz that are alleged to be unmarked" is simply false. (Br., 19; *see also* Br., 22.) VIZIO's First Motion clearly identified the products at issue, specifically arguing that "by operation of law, Roku has a license to the '299 and '285 Patents for the 'Roku TV'…, and Panasonic has a license to the '299 Patent for the 'Viera

line of televisions'…" Appx00163-164. VIZIO thus provided Ortiz with more than sufficient notice of the specific licensed products—"Roku TV" and Panasonic "Viera" televisions—that were subject to the marking statute. Ortiz could have addressed these products in its FAC, but instead chose to ignore VIZIO's marking arguments entirely.

Ortiz's failure to address VIZIO's specific arguments about the licensed products and its deliberate decision not to address marking in the FAC fully justify the district court's dismissal and exceptional case finding.

**e. Ortiz's settlement license-related arguments miss the mark**

Ortiz advances several misguided arguments concerning settlement licenses, none of which survive scrutiny.

First, Ortiz asserts it "would have presented evidence that establishes, under the facts of this case, that it did comply with the express language of § 287…" (Br., 20.) Again, Ortiz improperly attacks the Dismissal Order, not the Exceptional Case Order. (*See* Argument (I).) Additionally, many of Ortiz's arguments regarding what it "would have alleged" in a hypothetical second amended complaint are improper because they were not raised before the district court. (*See* Argument (II).)

Second, even if Ortiz did have evidence of compliance with the marking statute, it failed to present it in the FAC after VIZIO specifically raised marking as an issue. Indeed, Ortiz appears to undermine its position by admitting, for the first

time, that "Ortiz and its predecessors-in-interest have entered into settlement licenses with several defendant entities," but then alleging that "[d]uties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading." (Br., 21.) It was Ortiz's decision to withhold, or even plead the existence of, purported evidence of compliance of the marking statute.

Third, Ortiz's claim that "settlement licenses" exist only strengthens the argument that Ortiz needed to plead compliance with the marking statute on behalf of its licensees. (Br., 22.) Ortiz attempts to sidestep this issue, asserting that it understood the settlement licenses as representing the "end of litigation" rather than granting the licensees the right to sell products under Ortiz's patents. (Br., 22.) But Ortiz cites no legal authority supporting the notion a marking analysis is impacted by the licensee's intent or the patentee's belief about what a licensee may do with a license. Whether the licensee believed it was practicing the patent is irrelevant. *See Finjan, Inc. v. Juniper Networks, Inc.*, 387 F. Supp. 3d 1004, 1017 (N.D. Cal. 2019), aff'd, 825 F. App'x 922 (Fed. Cir. 2020) ("But whether a licensee does not believe it is practicing the asserted patent is irrelevant to [the patentee's] burden of proving that the identified products do not practice the patent (and were thus not required to be marked)."). The marking statute contains no scienter requirement for the licensee, and Ortiz's speculation that "discovery will likely show that none of the Defendants admitted to infringement and thus none of

the Defendants would have marked a product" is irrelevant. (Br., 26.) Instead, it is the mere existence of a license that triggered Ortiz's obligation to plead compliance with the marking statute, and its repeated attempts to evade this obligation lack any legal support.

Fourth, Ortiz's claim that further discovery will show "that the alleged unmarked product[s] [do] not practice the Patents-in-suit" is irrelevant. (Br., 22.) Ortiz's failure to present facts showing that no products needed to be marked—if that was indeed its position—was a critical omission. The district court's decision to dismiss the case based on Ortiz's repeated pleading failures was entirely justified and well within its discretion.

Moreover, Ortiz's assertion that these products did not practice the Patents-in-suit raises further serious concerns. Ortiz alleged in federal pleadings that Roku and Panasonic infringed the Asserted Patents, but then dismissed those cases before any discovery occurred. Appx637-648, at ¶¶7, 28-44; Appx650-653; Appx00655-661, at ¶¶7-9; Appx663-672. For Ortiz to now suggest that discovery would reveal that these products did ***not*** infringe raises serious concerns about Ortiz potentially filing frivolous lawsuits.

Fifth, Ortiz's claim that it would have amended its complaint with the "Verbiage in Section I(B)(3)" had it been given another chance is equally unpersuasive. (Br., 25.) VIZIO assumes Ortiz is referring to its statement that

"upon information and belief, Ortiz's predecessor(s)-in-interest, if any, have never sold a product." (Br., 21.) But nothing prevented Ortiz from pleading this in its original Complaint or in the FAC, and Ortiz offers no valid excuse for failing to include this language after VIZIO pointed out the deficiency in its First Motion. Even if Ortiz had included the "verbiage," however, it would not have saved the case because the "verbiage" fails to address the marking obligations of Ortiz's licensees. Ortiz cannot avoid the marking requirement given its admission that it entered into "settlement licenses" while simultaneously claiming there was infringement by these licensees.

Finally, Ortiz admits that it is likely none of the defendants from its prior cases marked their products with the Asserted Patents (Br., 26), rendering any further amendments futile, and further supporting the propriety of the district court's Dismissal Order.

**f. Ortiz's assertion that it did not have to mark is baseless**

Ortiz asserts that because it "does not practice the claimed invention," it was not required to plead compliance with the marking statute until VIZIO identified specific unmarked products. (Br., 23-24.) Ortiz misstates the law. The law is crystal clear on this issue: "The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement." *Arctic Cat*, 876 F.3d at 1366. Pleading compliance with § 287(a) is a threshold requirement, not a burden that

shifts to the defendant to identify unmarked products. Ortiz repeatedly failed to meet this fundamental pleading obligation, and its attempt to shift responsibility to VIZIO is both legally incorrect and meritless.

Ortiz also argues that there is no need to plead compliance with § 287(a) when "there are no products to mark." (Br., 24.) If this were true, Ortiz could have easily pled as much. But it did not. In its motions to dismiss, VIZIO identified specific products—"Roku TVs" and Panasonic "Viera" televisions—that were allegedly licensed under Ortiz's patents and clearly capable of being marked. Ortiz refused to address these facts, or to address them in its pleadings. Instead, Ortiz repeatedly failed to comply with § 287(a), including after being put on notice of the aforementioned products.

Furthermore, Ortiz's claim that its "pleadings are a good faith effort to change the law and should not serve as the basis for an award of fees" is dubious. (Br., 24.) If Ortiz were truly attempting in good faith to challenge existing law, it would have directly addressed the binding precedents cited in VIZIO's First and Second Motions. Instead, Ortiz ignored those cases entirely, making no effort to explain why they were incorrect or why the law should change. This appeal is not a legitimate, good faith attempt at legal reform but rather a transparent and haphazard effort to avoid accountability and monetary sanctions. Ortiz's argument

is also yet another impermissible collateral attack on the Dismissal Order. (*See* Argument (I).)

In short, Ortiz's failure to plead compliance with the marking statute, coupled with its failure to address binding precedent, confirms that its position lacked merit. The district court's decision to award fees on these facts was fully justified.

**g. Ortiz's method claim arguments are contrary to law**

Ortiz argues that the marking requirement did not apply because some of the asserted claims were method claims, or that Ortiz would have limited its case to method claims to avoid the marking requirement. (Br., 24, 28-29.) This improper collateral attack on the Dismissal Order (*see* Argument (I)) also misses the point entirely: Ortiz's failure to mention marking in either of its complaints, and not the nature of the asserted claims, is what led to the dismissal. Moreover, Ortiz consistently asserted system claims for the Asserted Patents, which unequivocally triggered the marking requirement from the outset. Appx00048-49; Appx00314-315.

The notion that Ortiz could have avoided the marking requirement by asserting only method claims is irrelevant and legally untenable. As VIZIO explained in its First Motion, Ortiz cannot escape the consequences of its failure to plead marking by retroactively focusing on method claims. This Court has made it

clear that "[w]here the patent contains both apparatus and method claims, to the extent there is a tangible item to mark, notice must be given to avail oneself of the constructive notice provisions of § 287(a)." Appx00164 (quoting *Am. Med. Sys.*, 6 F.3d at 1538). Thus, even if Ortiz had asserted only method claims, Ortiz was still required to address § 287(a) in its pleadings.

Furthermore, this Court has rejected attempts to circumvent the marking statute by dropping apparatus claims during litigation and treating them as if they never existed. In *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co*., this Court held that litigants may not "end-run" the marking statute by disclaiming claims during litigation. 853 F.3d 1370, 1383 (Fed. Cir. 2017). Numerous courts have rejected this tactic, holding that the marking requirement applies even if asserted apparatus claims are later abandoned. *CXT Sys., Inc. v. Acad., Ltd.*, No. 2:18-cv-00171-RWS-RSP, 2020 WL 9936135, at *4 (E.D. Tex. Jan. 28, 2020); *see also Huawei Techs. Co. v. TMobile US, Inc.*, No. 2:16-cv-00052-JRG-RSP, 2017 WL 4183103, at *2 (E.D. Tex. Sept. 4, 2017), *report and recommendation adopted,* No. 2:16-cv-00052-JRG-RSP, 2017 WL 4251365 (E.D. Tex. Sept. 20, 2017); *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 6787356, at *1 (E.D. Tex. Nov. 14, 2018) ("The Federal Circuit and other district courts have made clear that once apparatus and method claims are asserted, as is the case here, the requirements of the marking statute are triggered. . . This is

true even where, as here, the apparatus claims are later dropped."); *Huawei Techs. Co. Ltd v. T-Mobile US, Inc.*, No. 2:16-cv-00055-JRG-RSP, 2017 WL 5165606, at *3 (E.D. Tex. Oct. 15, 2017), *report and recommendation adopted sub nom. Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-cv-0055-JRG-RSP, 2017 WL 5157687 (E.D. Tex. Nov. 7, 2017)). Appx00165-166. Accordingly, Ortiz's suggestion that it would have "dropped" system claims to avoid marking issues—if given another chance—is functionally irrelevant.

Ortiz's argument is also disingenuous, as dropping the asserted system claims for the '299 Patent would have undermined Ortiz's infringement theory altogether. The method claims of the '299 Patent require actions performed by end users—not VIZIO itself. For example, claim 5 of the '299 Patent includes the step of "receiving data rendering device selections from said requesting wireless devices," which Ortiz mapped to user selections rather than VIZIO's actions. Appx00344. As VIZIO explained in its Second Motion, this meant VIZIO could only be liable for induced infringement of these method claims. Appx00421. However, because Ortiz could not prove pre-suit knowledge—an essential element for induced infringement—it was forced to drop these method claims in its FAC. This explains why Ortiz originally charted claim 1 (a method claim) in its original Complaint (Appx00074) but switched to charting claim 5 (a system claim) in the FAC (Appx00340) after abandoning its induced infringement claims. (Br., 4.)

#### h. Ortiz's due process argument lacks merit

Ortiz sporadically claims throughout its brief that it was denied due process because the district court considered Ortiz's public litigation records. (*See, e.g.*, Br., 25.) Ortiz never raised this argument before the district court, and it is well-settled that arguments not presented to the lower court cannot be raised for the first time on appeal. (*See* Argument (II).)

The district court's consideration of public litigation records was entirely proper under well-established legal principles. In ruling on a Rule 12(b)(6) motion to dismiss, a district court "may also consider matters of which [it] may take judicial notice" and "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)) and *Norris v. Hearst Tr.*, 500 F.3d 454, 461 at n. 9 (5th Cir. 2007)). This principle has been consistently upheld by courts, including the Fifth Circuit and the Supreme Court. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when ruling on Rule 12(b)(6) motions).

Public litigation records are matters of public record and can be judicially noticed without violating due process. Therefore, the district court acted within its discretion by considering public records related to Ortiz's prior litigations.

**i. Ortiz's Rule 11 argument is misplaced**

Ortiz attempts to sidestep the district court's exceptional case finding by invoking Rule 11, arguing that its conduct did not rise to the level of sanctions and therefore should not have been considered in the district court's decision to award attorneys' fees under § 285. (Br., 8, 29-33.) This argument, which was not presented to the district court (*see* Argument (II)), is fundamentally flawed because it conflates the distinct purposes of Rule 11 and § 285 and fails to acknowledge the broad discretion district courts have in evaluating the totality of the circumstances in a fee-shifting analysis.

First, Ortiz's reliance on Rule 11 is irrelevant to the district court's § 285 determination. Rule 11 sanctions address frivolous filings or pleadings submitted without proper legal or factual support, whereas § 285 provides district courts with the discretion to award attorneys' fees in cases that stand out based on either the substantive strength of a party's position or the unreasonable manner in which the case was litigated. The Supreme Court in *Octane Fitness* specifically emphasized that the standard for finding a case exceptional under § 285 is distinct from and broader than Rule 11 sanctions. District courts may award attorneys' fees when a

party's conduct—though not necessarily sanctionable under Rule 11—warrants such an award due to its unreasonableness or bad faith. *Octane Fitness*, 572 U.S. at 554.

The district court's finding here was based on the totality of Ortiz's litigation conduct, which included delay tactics and a failure to comply with procedural obligations, and demonstrated a pattern of unreasonable behavior. Indeed, the district court never invoked Rule 11 in either its Dismissal Order or Exceptional Case Order, mooting Ortiz's argument. Appx00004-10; Appx00012-19. The Supreme Court in *Octane Fitness* explicitly permits district courts to evaluate the totality of the circumstances, which includes all aspects of a party's litigation conduct—whether they fall under Rule 11 or otherwise. *Octane Fitness*, 572 U.S. at 554.

Second, Ortiz's contention that conduct potentially sanctionable under Rule 11 cannot be considered as part of the totality of the circumstances under § 285 is wrong as a matter of law. This Court has said that "a Rule 11 violation can serve as the basis for finding a case exceptional." *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007); *see also SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015) (noting the Supreme Court "gave no indication that we should rethink our litigation misconduct line of § 285 cases" and "that district courts can turn to our pre-*Octane Fitness* case law for guidance").

Third, Ortiz attempts to cast the Exceptional Case Order as being based on Rule 11, arguing that the award of attorneys' fees violates various provisions of Rule 11. (Br., 32-33.) The district court never invoked Rule 11, rendering Ortiz's arguments moot. Moreover, Ortiz's suggestion that Rule 11 must be the exclusive mechanism for addressing litigation misconduct ignores the very purpose of § 285. The Federal Circuit has affirmed fee awards in cases where a party's litigation conduct, including discovery-related failures, contributed to the finding that the case was exceptional. *Xiaohua Huang v. Huawei Techs. Co.*, 735 F. App'x 715, 722 (Fed. Cir. 2018).

Fourth, Ortiz's contention that the record "does not reflect that Ortiz was dilatory in its obligations" is untenable. (Br., 36.) The district court found that Ortiz repeatedly failed to serve infringement contentions, missed critical deadlines, and stalled the litigation process—all of which caused delays in claim construction and other procedural steps. Appx00613-614. Ortiz's failures were not isolated incidents but part of a broader pattern of conduct aimed at delaying the litigation and forcing VIZIO into a position where it might consider a nuisance value settlement. This type of conduct certainly supports the district court's determination that the case was exceptional under § 285, regardless of whether or not it is independently sanctionable under Rule 11.

Ortiz's attempt to limit the district court's discretion by invoking Rule 11 is legally baseless and irrelevant. In reaching its § 285 determination, the district court correctly considered the totality of Ortiz's litigation conduct, including its failure to meet discovery obligations and its broader pattern of unreasonable behavior. The district court's award of attorneys' fees based on Ortiz's actions throughout this litigation was no abuse of discretion.

### B. The District Court Properly Considered Ortiz's Failure to Comply with Discovery Deadlines

A district court possesses broad authority to manage its docket and enforce compliance with its orders. *Hologic, Inc. v. Lunar Corp.*, 64 F.3d 678 (Fed. Cir. 1995) ("A district court enjoys substantial discretion to manage its docket in an efficient manner…"); *Kearns v. Gen. Motors Corp.*, 31 F.3d 1178 (Fed. Cir. 1994) ("A district court can use a variety of sanctions to ensure compliance with its orders."). As this Court has said, "many forms of misconduct can support a district court's exceptional case finding," including litigation misconduct and bad faith litigation practices. *Monolithic*, 726 F.3d at 1366 (Fed. Cir. 2013); *see also SFA*, 793 F.3d at 1349 ("district courts can turn to our pre-*Octane Fitness* case law for guidance."). Such misconduct is sufficient to render a case exceptional under 35 U.S.C. § 285. *Id*. The district court's actions in this case, grounded in its authority to maintain orderly proceedings, were wholly appropriate.

In its Fee Motion, VIZIO demonstrated that Ortiz failed to prosecute its case by neglecting essential procedural obligations. Throughout the case, Ortiz never served initial disclosures, infringement contentions, or discovery requests. Appx00613. The deadlines for these disclosures and contentions were established by agreement between the parties and memorialized in their Joint Report Regarding Status and Scheduling Order. Appx00386. Despite agreeing to these deadlines, Ortiz chose to disregard them entirely. This negligence was made more egregious when, after months of silence, Ortiz unexpectedly sent a settlement demand letter—underscoring Ortiz's sole intent to extract a nuisance settlement rather than pursue the case on its merits. Appx00632.

In the Northern District of Texas, patent cases follow a structured progression. Each step, such as serving infringement contentions, triggers subsequent deadlines, such as for invalidity contentions and claim construction. *See* N.D. Tex. Misc. Order No. 62 at ¶¶3-1(a), 3-3(a), 4-1(a), 4-2(a), 4-3(a), 4-5(a-d), 4-6. By deliberately failing to serve infringement contentions, Ortiz unilaterally disrupted the entire procedural timeline, effectively nullifying the agreed-upon deadlines and halting the progress of the case for many months. Ortiz cannot claim ignorance here. VIZIO explicitly alerted both Ortiz and the district court to this misconduct, pointing out Ortiz's failure to serve infringement contentions. Appx00594 ("Ortiz's infringement contentions were due July 19, 2023… Yet, as of

the filing of this document, VIZIO has not received infringement contentions.”); Appx00613-614. Despite these warnings, Ortiz took no action to rectify its failure or comply with court deadlines.

Ortiz’s conduct reflects a deliberate and concerted effort to avoid prosecuting its case. As VIZIO argued, Ortiz took no meaningful steps to pursue the case on its merits. Appx00614. Instead, after several months of inactivity, Ortiz’s only action was to make a settlement demand below the cost of defense. Appx00614. This behavior fits squarely within the definition of bad faith litigation.

This Court has affirmed the award of fees where the record reflects the plaintiff submitted “no evidence to support his litigation position” and where it “litigated the case in a frivolous manner.” *Xiaohua Huang*, 735 F. App’x at 722. In considering the totality of the circumstances here, the district court properly found that Ortiz’s litigation conduct was unreasonable, including its failure to comply with discovery deadlines and serve infringement contentions. Appx00006.

The Supreme Court has instructed that district courts are best positioned to determine whether a case is exceptional given their close familiarity with the case and the parties’ conduct over the course of the litigation. *Highmark*, 572 U.S. at 564. Here, the district court, which lived with Ortiz’s repeated delays and disregard for procedural requirements, was well within its discretion to consider these actions as part of its decision to award fees under § 285. The district court did not

abuse its discretion by factoring Ortiz's blatant disregard for case deadlines into its exceptional case finding.

**1. Ortiz's Attempt to Justify Its Inaction Is Unpersuasive**

Ortiz attempts to explain its complete inaction during the case by claiming its "legal strategy" was to wait for the district court's ruling on VIZIO's motion to dismiss. (Br., 34.) However, if Ortiz truly intended to pause the litigation pending a ruling by the district court, it should have filed a motion to stay the case. The Northern District of Texas provides clear mechanisms for requesting a stay, but Ortiz chose not to utilize them.

Ortiz further argues that it is "reasonable in a patent case to defer fact discovery until after *Markman*" (Br., 34), citing Judge Albright's rules in the Western District of Texas as support. But Ortiz filed its case against VIZIO in the Northern District of Texas. The applicable rules in the Northern District of Texas—specifically, N.D. Tex. Misc. Order No. 62, ¶2-1(a)(1)—require parties to propose modifications to deadlines if necessary. Ortiz made no such proposal to modify the agreed-upon deadlines reflected in the parties' Joint Report Regarding Status and Scheduling Order. Appx00383-393.

Ortiz further argues that it intended to "serve [infringement contentions] by motion as allowed by the local rules," referring to N.D. Tex. Misc. Order No. 62, ¶3-7(b). However, that provision permits *amendment* of contentions and only upon

a showing of "good cause," which "may include newly discovered accused instrumentalities, newly discovered bases for claiming infringement, or newly discovered prior art references." The rule does not provide a loophole for a party to unilaterally disregard established deadlines from the outset, as Ortiz did here.

### 2. Ortiz's Rule 37 Argument Is Misguided

Ortiz contends that "discovery violations are to be handled under Rule 37" and that any such violations should not factor into the totality of the circumstances in a § 285 analysis. (Br., 35-36.) The Supreme Court made clear in *Octane Fitness*, 572 U.S. at 554, that district courts may determine whether a case is "exceptional" by considering the totality of the circumstances. This includes all aspects of the case, and courts are free to "look at everything" when undertaking a totality of the circumstances analysis. *United States v. Rivera*, 825 F.3d 59, 65 (1st Cir. 2016).

Ortiz cites no law for the proposition that if an action can be characterized as a "discovery violation," it cannot be considered in a Section 285 analysis.[4] In fact, litigation misconduct—including failure to comply with discovery deadlines—has consistently been recognized as a valid basis for finding a case exceptional. The

[4] In an unexplained footnote, Ortiz cites *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 560 F.3d 1291, 1309 (Fed. Cir. 2009). (Br., 36 at fn. 99.) *ClearValue* involved the reversal of fees under section 285, in part, because all original claims were reinstated, negating the "prevailing party" finding originally entered by the district court.

district court was well within its discretion to consider Ortiz's discovery violations in its assessment of whether the case was exceptional under § 285.

Ortiz's assertion that "[t]he record does not reflect that Ortiz was dilatory in its obligations" is demonstrably false. (Br., 36.) The record clearly shows that Ortiz failed to serve infringement contentions, which caused significant delays to the entire claim construction process. Ortiz's claim that it did not "ignore the District Court's Order" is equally untrue. (Br., 37.) Ortiz's failure to serve infringement contentions in accordance with the local rules was a direct violation of the district court's scheduling order. *See* N.D. Tex. Misc. Order No. 62, ¶1-2 ("This Order applies to all civil actions file in or transferred to the Dallas division of the Northern District of Texas that allege infringement of a utility patent in a complaint…").

Lastly, Ortiz's assertion that it "litigated in a timely and reasonable manner" is simply not supported by the facts. (Br., 41.) The reality is that Ortiz repeatedly ignored the district court's deadlines, derailing the claim construction process and delaying the case at every turn. Ortiz's litigation conduct was far from "timely" or "reasonable."

### C. The District Court Properly Considered Ortiz's Litigation History

This Court has explained, "[i]n considering the 'totality of the circumstances' in a § 285 motion, a party's similar conduct in other litigation is

also relevant." *Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1183 (Fed. Cir. 2018). Moreover, "a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285." *SFA*, 793 F.3d at 1350. The district court's consideration of Ortiz's litigation history falls squarely within these principles.

VIZIO's First and Second Motions to Dismiss thoroughly documented Ortiz's litigation history with the Asserted Patents. Appx00146-149; Appx00401-404. VIZIO demonstrated that Ortiz and its counsel have a long history of asserting these patents and then quickly backing down when faced with substantive challenges. Appx00167; Appx00422. Ortiz does not dispute this; its oppositions to VIZIO's First and Second Motions failed to address its litigation history. Appx00374-378; Appx00571-581. When VIZIO raised this issue again in its Fee Motion, specifically noting Ortiz's pattern of filing and dismissing cases to avoid substantive rulings, Ortiz once again chose not to address it.[5] Appx00606-609; Appx00614-615. Ortiz's continued silence left VIZIO's arguments unrebutted. Appx00784-792.

[5] By failing to address this issue, Ortiz waived any objection to the district court's reliance on its litigation history. (*See* Argument (II).)

The district court appropriately relied on this unrebutted evidence in its § 285 analysis. Courts must ensure that "unrebutted, legally significant evidence is not arbitrarily ignored." *Ming Fang Chen v. Whitaker*, 757 F. App'x 254, 261 (4th Cir. 2018). The district court did just that—it carefully considered the unrebutted evidence of Ortiz's litigation history. While the district court noted that specific evidence regarding the number or amount of Ortiz's settlement offers in other cases was not available, it also observed that Ortiz had filed and voluntarily dismissed numerous cases involving the Asserted Patents before or at the motion-to-dismiss stage. Appx00007-8. The district court properly weighed this evidence as part of its broader evaluation of the totality of the circumstances. The district court's careful and measured consideration of Ortiz's litigation history was both appropriate and consistent with well-established law.

Thus, the district court's decision to factor Ortiz's litigation history into its totality of the circumstances analysis was sound, well-supported, and consistent with this Court's precedent. There was no abuse of discretion in the district court's careful consideration of this relevant and unrebutted evidence.

### D. The District Court Properly Considered Ortiz's Nuisance Value Settlement

The district court appropriately considered Ortiz's nuisance value settlement demand as evidence supporting a finding that this case was exceptional. This approach is entirely consistent with this Court's precedent, which recognizes that

settlement offers unrelated to the merits of the litigation can demonstrate bad faith or unreasonable litigation conduct. *See Blackbird*, 944 F.3d at 916-17 (affirming that "nuisance value settlement offers" less than the cost of defense and other misconduct support an exceptional case finding); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (upholding a finding that the patentee acted in bad faith by exploiting the high cost of patent litigation to extract a nuisance settlement); *AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1362 (Fed. Cir. 2017) (finding that nuisance value settlements should be considered in determining whether a case is exceptional).

Ortiz's main argument is that the district court's consideration of the settlement offer was an abuse of discretion because $149,000 is a substantial sum of money. Ortiz contends that "[t]here are families across the United States that do not make $149,000 in a year" (Br., 38), referencing median household income data as though it is relevant to this case. However, Ortiz's argument entirely misses the point: $149,000 was far below the cost of litigating a patent case of this complexity.

More tellingly, Ortiz admits that Ramey LLP, its counsel, makes settlement offers based on the procedural stage of the case, with the settlement amounts increasing as the case progresses. (Br., 39.) This admission only underscores the fact that Ortiz's settlement demands are not linked to the merits of the case. Ortiz's

reliance on this strategy further reinforces the conclusion that its settlement offer was not based on the actual value of the Asserted Patents but was an attempt to extract a nuisance value settlement, directly contradicting Ortiz's assertion that "there is no evidence, or anything in the record, that Ortiz sought nuisance value settlements while pressing baseless infringement contentions." (Br., 45.)

The district court's consideration of Ortiz's nuisance value settlement demand as part of the totality of the circumstances was entirely appropriate. The court carefully assessed the facts and, based on well-established precedent, determined that Ortiz's settlement offer supported a finding that this case was exceptional. There was no abuse of discretion in the district court's decision.

## IV. Ortiz's Remaining Miscellaneous Arguments Are Unavailing

### A. NPE Status Is Not a Shield from Fee Awards Under § 285

Ortiz contends that there is "nothing inherently improper" about being a non-practicing entity ("NPE") and settling patent infringement cases for money. (Br., 41.) Ortiz's argument that its status as an NPE settling patent cases for money should somehow protect it from exceptional case findings ignores Ortiz's conduct in this specific case, which the district court considered in its § 285 analysis.

The district court also noted that Ortiz filed and dismissed several lawsuits involving the same patents, without addressing the merits, indicating a pattern of behavior designed to extract nuisance value settlements. The fact that Ortiz is an

NPE is irrelevant in light of its conduct, particularly when viewed in conjunction with the other litigation misconduct identified by the district court.

### B. Ortiz's Arguments About the Costs of Litigation Do Not Excuse its Exceptional Conduct

Ortiz attempts to excuse its conduct by focusing on the high costs of patent litigation, suggesting that it pursued early settlement offers as a way to avoid these burdens. (Br., 44-45.) But the fact that patent litigation can be costly does not justify abusive litigation tactics or shield a party from a finding of exceptionality under § 285, particularly for a case it chose to file.

Ortiz's argument that the high cost of patent litigation should somehow mitigate its conduct ignores the well-established principle that litigants must still comply with their legal obligations, regardless of the costs involved. Courts expect all parties—whether large corporations or NPEs—to pursue litigation in good faith and in compliance with procedural rules. The costs associated with patent litigation do not excuse the types of litigation misconduct that Ortiz engaged in here, such as failing to comply with discovery deadlines, filing deficient pleadings, and making settlement offers wholly disconnected from the merits of the case.

## CONCLUSION & PRAYER FOR RELIEF

Because Ortiz has not demonstrated that the district court abused its discretion in finding this case exceptional under § 285 or in awarding VIZIO's reasonable attorneys' fees, the district court's order should be affirmed in its

entirety, as well as providing any additional award of costs or attorneys' fees this Court deems just.

Dated: September 20, 2024

Respectfully submitted,

/s/ *Steven W. Harstell*
Paul J. Skiermont
Steven W. Hartsell
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, TX 75201
pskiermont@skiermontderby.com
shartsell@skiermontderby.com

Rex Hwang
SKIERMONT DERBY LLP
633 W. Fifth Street, Suite 5800
Los Angeles, CA 90071
rhwang@skiermontderby.com

*Attorneys for Appellee*
VIZIO, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-1783

**Short Case Caption:** Ortiz & Associates Consulting, LLC v. VIZIO, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 12,944 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ______ lines of text.
- [ ] the filing contains ______ pages / ______ words / ______ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ______).

Date: 09/20/2024

Signature: /s/ Steven W. Hartsell

Name: Steven W. Hartsell

Save for Filing